Thomas A. MUNZ, Appellant,

v.

Crispus C. NIX; Ronald G. Welder; Charles Harper; Kyle Bowden; David Babcock; and Charles W. Lee, Appellees.

No. 89–1030.

United States Court of Appeals, Eighth Circuit.

Submitted July 7, 1989.

Decided July 5, 1990.

Brian L. Wirt, Des Moines, Iowa, for appellant.

Kristin W. Ensign, Des Moines, Iowa, for appellees.

Before LAY, Chief Judge, HEANEY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

HEANEY, Senior Circuit Judge.

At issue on this appeal is whether a state prisoner may bring a section 1983 action in federal court to challenge a decision of prison officials prohibiting him from serving as a jailhouse lawyer without first exhausting state judicial relief under *Offet v. Solem*, 823 F.2d 1256 (8th Cir.1987). The district court held that exhaustion was required. We reverse.

## BACKGROUND

Thomas Munz is a prisoner at the Iowa State Penitentiary (ISP), where he has functioned as a jailhouse lawyer. On April 20, 1988, he sent a letter to his brother, also an inmate at the same institution, marked "legal mail." The four-page letter discussed the law as related to prisoners' rights and remedies generally. The last page of the letter contained what has been construed as a threat against Thomas Munz's former lawyer. During a prison shakedown, a guard noticed an envelope in Munz's brother's cell containing matches and the letter. The guard opened the letter, read it, and turned it over to prison officials. A prison tribunal found Munz guilty of making physical threats in the letter. As punishment for writing the letter, he was sentenced to solitary confinement for fifteen days, confinement in administrative segregation for an additional six months, loss of 180 days of earned good-time credit, and loss of jailhouse lawyer rights for one year.[1]

■ Munz simultaneously filed pro se complaints in state and federal court. His federal civil rights action under 42 U.S.C. § 1983 sought injunctive relief and damages from the decision to suspend his right to function as a jailhouse lawyer.[2] The defendants are the warden and the prison administrative officials who imposed or upheld the sanctions. Munz claims that the restrictions placed on his doing legal work for other prisoners violates his and other prisoners' constitutional rights and is contrary to past settlement decrees governing the prison,[3] in particular the decree reached in *Gavin v. Ray*, No. 78–62–2 (S.D.Iowa

1. In light of Munz's sparse disciplinary record, ISP regulations permitted only a loss of eight days good-time credit for this offense. Munz appealed the disciplinary committee's decision. Defendant Welder denied relief in all respects, telling Munz that if he did not agree, "[y]ou may explain all of your views to some judge." After Munz brought suit, however, ISP officials unilaterally reduced his loss of good-time credit to the eight-day maximum.

2. Under the heading, "Relief," one sentence of Munz's complaint requests a declaratory judgment "that the Defendants' acts, policies and practices described herein violate Plaintiff's rights as well as other prisoners, under the U.S. Constitution." Complaint at 4. The following paragraphs ask for injunctive relief and contempt orders relating to the loss of his jailhouse lawyer rights and his ability to prosecute this suit. Because the "Fact" section of Munz's complaint recites all the events leading up to Munz's loss of his jailhouse lawyer rights—including the search of his cell, the hearing procedures,

and the other sanctions—and the complaint includes legal arguments connected with each, the requests for declaratory relief and damages might be construed to pertain to the entire disciplinary incident and decision. Yet, Munz did not name any of the prison guards who conducted the search as defendants. We leave construction of the complaint to the district court and focus, as do the parties, on Munz's challenge to the suspension of his jailhouse lawyer rights.

3. We consider whether the action with respect to the jailhouse lawyer issue may be frivolous. While there is no personal right to be a jailhouse lawyer, to assure access to the courts, a prison must allow prisoners to assist one another unless there is available to prisoners a reasonable, alternative means of legal assistance. *Johnson v. Avery*, 393 U.S. 483, 490, 89 S.Ct. 747, 751, 21 L.Ed.2d 718 (1969); *Gassler v. Rayl*, 862 F.2d 706, 707 (8th Cir.1988); *Ervin v. Ciccone*, 557 F.2d 1260, 1262 (8th Cir.1977) (retaliation claim). Munz's complaint may state a claim in

May 3, 1984). *Gavin* was a class action lawsuit for all prisoners at ISP raising numerous constitutional challenges to the disciplinary practices used at ISP during the late 1970s.[4] The consent decree carefully worked out a system by which prisoners in administrative segregation could have access to law books and to the courts so that their complaints of mistreatment might be

several ways. First, Munz's complaint states a claim if there is no reasonably effective alternative means of assistance available to ISP prisoners or to any specific grouping of prisoners within ISP. *Wilson v. Iowa*, 636 F.2d 1166, 1167 (8th Cir.1981). Under *Wilson*, there must be an allegation in the complaint that there are no alternative means of assistance. While Munz's complaint does not make this claim, *Wilson* requires that the plaintiff be allowed to amend the complaint. *Id.* at 1167. Second, it is not clear from the complaint whether the suspension of Munz's jailhouse lawyer rights affected his own access to the courts, the prison law library, or to other legal services. Third, Munz alleges that he was unable to return legal papers belonging to other prisoners. Munz should be allowed to advance reasons why he suffered injury as a result. We note that the district court specifically requested the State to respond to this allegation. The State failed to respond. Fourth, the complaint states that the defendants' actions violated consent decrees governing ISP.

**4.** The Amended Complaint described Gavin's allegations of mistreatment over a six-month period, made possible by the denial of access to legal process.

On or about July 31, 1977 Plaintiff Gavin was subjected to gassing in his cell.... After he was gassed, Plaintiff Gavin was moved to a "strip cell" which was unfurnished except for a toilet, sink and concrete slab and was confined without a mattress or blanket, running water or a toilet which he could flush from within the cell for a period of 48 hours. Plaintiff Gavin was confined in this "strip cell" for approximately six more consecutive days, during which he was fed only one meal daily; was not given toilet paper, toothbrush, or toothpaste; was not allowed to shower; was permitted no running water; was not allowed to have his toilet flushed; and was told to drink from his unflushed toilet bowl.

... Defendants ... threatened to tear gas Plaintiff Gavin and then entered his cell, stripped him of all his clothing, placed him in leg irons, and cuffed his hands behind his back. Defendants ... then forced Plaintiff Gavin to bend over a table, and Defendant ... sexually abused him with a nightstick. Defendant ... then jerked Plaintiff Gavin's head up by his hair and sprayed either chemical mace or tear gas in his face, severely burning his left eye. Plaintiff Gavin was then placed in a

quickly known. The decree further provided that any prisoner in administrative segregation would have the right to receive or offer legal assistance to other prisoners.[5] To insure that the decree was enforceable, the parties agreed that "[t]he Court will retain jurisdiction to consider compliance with this Agreement and decree...." Settlement Agreement at 3.

belly chain. His handcuffs were locked to the belly chain, a football helmet was strapped on his head and he was returned to the "strip cell" from which he had been removed.

... Defendants ... then used chains to truss Plaintiff Gavin in essentially the following manner: a. A length of chain was draped over each shoulder; b. The chains were then crossed and padlocked just below his larynx in front and at the base of his neck in back; c. The front ends of the chains were brought through his crotch and padlocked together with the back ends behind his back; d. His hands were manacled behind his back and padlocked to the knot to chains there; e. A belly chain was then woven through the other chains and padlocked with the others at his back; f. Leg irons were shackled to the biceps of his arms and the attached chain was woven through the back chains and padlocked into the knot of chains at his lower back. When shackled in this manner, Plaintiff Gavin's head was forced back and he was unable to move his head without choking himself, and he was unable to sit or lie down. Plaintiff Gavin was restrained in this manner for approximately six hours despite his repeated requests for relief. After six hours the front chains were loosened and Plaintiff Gavin was taken to a different cell in CH20. The restraints ... were not removed until approximately 24 hours after they were first imposed.

.... This confinement was continued through January 18, 1978, during which time Plaintiff Gavin received no hot meals.... During this period, Defendant ... directed Plaintiff Gavin's counselor, Rick Barry, to refuse his requests to telephone his attorneys.

Amended Complaint at 3–4 (April 2, 1979) (paragraph breaks omitted).

**5.** The *Gavin* decree incorporates by reference the provisions of *Parrot v. Ray*, No. 78–154–2 (S.D.Iowa March 6, 1981) (rights of protective custody inmates). The *Parrot* consent decree provides that: "[a]ny PCI shall be allowed to receive ... legal assistance ... from an ISP inmate of the PCI's choice.... The PCI inmate providing legal assistance shall be permitted to receive and respond to any request for legal assistance from a PCI within a reasonable time." *Id.* at 12. The *Gavin* decree provides for access to a law library but does not require that the State provide lawyers for inmates.

The district court denied preliminary injunctive relief and stayed further consideration of Munz's complaint pending exhaustion of state post-conviction relief. It stated: "The decision in *Offet v. Solem*, 823 F.2d 1256 (8th Cir.1987), requires that these proceedings be stayed. There is available to plaintiff a state remedy; he may challenge his confinement under Iowa Code § 663A.2(6)." Initial Review Orders at 2 (Dec. 2, 1988). Munz appealed and we directed that counsel be appointed. Counsel focuses only on Munz's right to act as a jailhouse lawyer and argues that the district court erred in staying the entire action because *Offet* does not apply to challenges to the conditions of confinement. We agree.

## THE DISTRICT COURT'S ORDER IS APPEALABLE

■ Initially, the State argues that the district court's order is not appealable. We disagree. The stay is a collateral order and therefore appealable under *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546–47, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949), and its progeny. The requirements of a collateral order are that (1) it conclusively determine the disputed question, (2) the issue must be separate and distinct from the merits, and (3) the decision must be effectively unreviewable on appeal. *Nixon v. Fitzgerald*, 457 U.S. 731, 742, 102 S.Ct. 2690, 2697, 73 L.Ed.2d 349 (1982); *Johnson–El v. Schoemehl*, 878 F.2d 1043, 1046 (8th Cir.1989). The district court's interpretation of *Offet* is separate from the merits of Munz's claims and conclusively determines the issue of the

court's jurisdiction. *Offet* creates a limited exception to a citizen's right to have his or her civil rights claim heard in federal court. Forcing a prisoner to bring his claim in state court first can effectively sacrifice that right. *See Idlewild Liquor Corp. v. Epstein*, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962) (per curiam) (stay in favor of state proceedings to determine constitutionality of state statute is an appealable order); *see also Moses H. Cone Hosp. v. Mercury Constr.*, 460 U.S. 1, 9–10, 103 S.Ct. 927, 933–34, 74 L.Ed.2d 765 (1983) (discussing *Idlewild*). We thus consider whether the stay was appropriate.[6]

## *OFFET* DOES NOT REQUIRE A STAY

■ *Offet* requires that section 1983 actions must be stayed pending state exhaustion if the 1983 action would necessarily have a preclusive effect in subsequent state proceedings considering the duration of a prisoner's sentence. 823 F.2d at 1258. *Offet* does not require that challenges to confinement conditions be stayed. *Bressman v. Farrier*, 900 F.2d 1305, 1307 (8th Cir.1990).[7]

■ Munz's complaint sought a determination of whether his right to communicate with other prisoners regarding legal problems could be restricted. The district court erred in not deciding this claim. Accordingly, the district court should have assumed that Munz violated prison rules and decided whether the prison authorities had a right to deprive Munz of his jailhouse lawyer rights. It also should have considered whether it had jurisdiction under

6. Munz also appeals the denial of his preliminary injunction. The denial of a preliminary injunction is an interlocutory decision reviewable under 28 U.S.C. § 1292. Reversal is limited to those decisions that are based on erroneous *interpretations of the law or involve an abuse of* discretion. *Rittmiller v. Blex Oil*, 624 F.2d 857, 859 (8th Cir.1980). We elect not to consider the district court's decision to deny a preliminary injunction because the facts of the case are insufficiently developed and the current status of Munz is uncertain. Munz's request for injunctive relief may now be moot because more than one year has passed since the sanction was first imposed and his claims may be exhausted.

We decide the other issues presented because, regardless of Munz's status, they are capable of repetition without effective review. *Nebraska Press Assoc. v. Stuart*, 427 U.S. 539, 546–47, 96 S.Ct. 2791, 2796–97, 49 L.Ed.2d 683 (1976). An erroneous stay order may prejudice a prisoner's right to a federal hearing before we are able to review the district court's decision.

7. We also have not required that hybrid suits challenging both the conditions and duration of confinement be stayed in their entirety if the claims not controlled by *Offet* are severable. *Bressman*, 900 F.2d at 1307–08 (*Bressman v. Farrier*).

the consent decree of *Gavin v. Ray* and decided whether any part of the decree was violated.

## THE EFFECT OF MUNZ'S STATE COURT PETITION

Munz's state post-conviction petition challenged the search of his brother's cell, the disciplinary procedures, and the sanctions imposed. In one sentence of his state petition, Munz challenged the loss of his jailhouse lawyer rights. *Munz v. Iowa,* No. PCR 1833(N)0288, Petition at 6 (Lee Co. Dist. Ct. Sept. 7, 1988). He also asked for the nullification of all sanctions imposed. The state court did not mention the suspension of his jailhouse lawyer rights in listing Munz's contentions, in listing the sanctions Munz had received, or in rejecting Munz's petition. The state court indicated, however, that it had reviewed all his claims. Munz timely appealed to the Iowa Supreme Court. He failed to file a brief, however, and his appeal was dismissed on October 3, 1989 for failure to prosecute. *Munz v. Iowa,* No. 89–721 (Iowa Oct. 3, 1989) (dismissed pursuant to Iowa Appellate Procedure Rule 19(a)).

▮ If the district court's jurisdiction is triggered under *Gavin v. Ray,* then res judicata may not be available for allegations relating to the *Gavin* decree to any defendant in privity with the defendants in *Gavin.*[8] By bestowing continuing jurisdiction on the district court, the defendants in *Gavin* may have waived the right to use estoppel as a device for defeating the district court's independent review and interpretation of the agreement. They agreed that:

> The Court will retain jurisdiction to consider compliance with this Agreement and decree, as well as to consider modifications deemed necessary by the parties but not otherwise provided for herein.
>
> It is the express intent of the parties that the Court will have authority to consider the purposes of the Agreement,

recommendations of the parties, the security and order needs of the institution, and prisoner rights in reviewing disputes as to the Agreement and its development and implementation as well as subsequent modifications.

> The Court shall require the parties to attempt to work out any differences of opinion in the interpretation of the Agreement and decree or in the development and implementation of such or in efforts to modify the Agreement prior to filing requests for modification or applications for an order to show cause on a class-wide basis.

Settlement Agreement at 3. Were it otherwise, *Offet* would·deprive the district court of jurisdiction in clear conflict with the parties' agreement. Res judicata is an affirmative defense which can be waived by state authorities.

▮ If the district court does not have independent jurisdiction under *Gavin* or does not interpret the decree as waiving any rights, and if Munz has received a full and fair hearing, then the district court must give the same preclusive effect to state court judgments as a court in the same state would. 28 U.S.C. § 1738 (1966); *Allen v. McCurry,* 449 U.S. 90, 99, 101, 101 S.Ct. 411, 417, 418, 66 L.Ed.2d 308 (1980).

## CONCLUSION

Accordingly, we reverse and remand to the district court. On remand, the district court must review all the issues raised in the complaint to determine the scope of the action in light of this opinion and any changes in Munz's condition. Next, the district court should consider whether this matter implicates the consent decree of *Gavin v. Ray,* and may transfer this case to the judge who presided over *Gavin v. Ray* for proceedings consistent with this opinion.

JOHN R. GIBSON, Circuit Judge, dissenting.

I respectfully dissent. Thomas A. Munz has presented to the district court a miscel-

---

**8.** To the extent it is necessary to bring a contempt action to trigger jurisdiction under the decree, the rule in this circuit is that pro se petitions are to be liberally construed. *See Ruiz*

*v. Administrator of Corrections,* 599 F.2d 485 (1st Cir.1979) (prisoner action to enforce decree).

laneous group of claims based upon his loss of eight days of earned good-time credit as well as his loss of the right to act as a jailhouse lawyer for a year.

The loss of good-time credits directly affects the period of Munz's confinement and, under *Offet v. Solem*, 823 F.2d 1256, 1258 (8th Cir.1987), is an issue which must be exhausted in state court. I read our opinion in *Bressman v. Farrier*, 900 F.2d 1305 (8th Cir.1990), to hold that, in mixed cases such as this, involving both habeas corpus and 42 U.S.C. § 1983, a stay is required for the state court to consider the confinement issues. *See Bressman*, 900 F.2d at 1308–09 (discussing *Mahers v. Nix*. In addition to *stare decisis*, the desire to conserve judicial resources supports such a holding. After this issue is determined and the case is ripe for consideration by the district court, the issues involving Munz's jailhouse lawyer rights could conceivably require consideration by the *Gavin* court. It seems that the most orderly way to proceed would be to have the state issue decided first and then permit the district court to determine the best way to proceed from that point.

Concerning the jailhouse lawyer issue, the entire thrust of Munz's claim is that he was deprived of the right to serve as jailhouse lawyer for other prisoners. In *Gassler v. Rayl*, 862 F.2d 706 (8th Cir.1988), we held that "an inmate simply does not have the right to provide his fellow inmates with legal assistance." *Id.* at 708. *Gassler* answers in full Munz's jailhouse lawyer claim. We need not consider today whether the *Gavin* decree may be contrary to the later decisions of this court.

Because remanding this case to the district court at this point essentially involves an exercise in futility, I would affirm the stay, and after state procedures have been exhausted, allow the district court to consider the remaining issues.