**Paul D. GIBBS, Plaintiff–Appellant,**

v.

**Robert J. HOPKINS; Pat Leavenworth, Defendants–Appellees.**

No. 92–1547.

United States Court of Appeals, Sixth Circuit.

On Briefs April 30, 1993.

Decided Nov. 22, 1993.

Paul D. Gibbs, pro se.

Julia R. Bell (briefed), Office of the Atty. Gen., Corrections Div., Lansing, MI, for defendants-appellees.

Before: MERRITT, Chief Judge; and KEITH and SUHRHEINRICH, Circuit Judges.

MERRITT, Chief Judge.

Plaintiff Paul Gibbs, a pro se Michigan prisoner, appeals the judgment of the District Court dismissing his civil rights action for damages filed under 42 U.S.C. § 1983. Gibbs alleges retaliation by defendant prison officials Robert J. Hopkins and Pat Leavenworth for his successful assistance of other prisoners in bringing their own civil rights suits against prison officials. For the following reasons, we affirm in part and reverse in part the summary judgment of the District Court.

## I.

Gibbs was a prisoner at the Chippewa Correctional Facility in Kincheloe, Michigan. In late 1990, Gibbs was placed in administrative segregation for possession of contraband. On April 2, 1991, Hopkins recommended that Gibbs be reclassified to "Level IV of the general prison population." The facility's Security Classification Committee, of which defendants are members, accepted Hopkins' recommendation two days later and filed an order for his release. Gibbs remained confined in segregation, apparently

due to lack of bed space. "Level IV general population," to which Gibbs would have been returned, is usually full due to the "trade" of prisoners from other facilities in order to utilize fully the beds in Michigan's crowded prisons. This results in a lengthy wait for those being reclassified from segregation.

On April 8, Gibbs threatened a nurse, apparently in an attempt to receive certain prescription medication, and was given 30 days' detention at a hearing on April 12. This detention for serious misconduct ended May 12, but Gibbs was not released from segregation. Gibbs did not receive his mandatory monthly review of classification status during June. On July 12, Hopkins recommended that Gibbs be "continued" in segregation, but suggested he "shall be released as soon as all is balanced out." The Committee accepted that recommendation to continue the confinement, concluding that Gibbs should remain in segregation due to his "serious misconduct." However, the Committee determined after Gibbs' August 12 review that he should be reclassified back to general population pending available bed space. Gibbs was not returned to general population until October 18, 1991.

In his procedural due process claim, Gibbs argues that he was never reclassified to segregation following the completion of his 30–day detention on May 12, that such reclassification was required, and that failure to do so deprived him of a liberty interest without due process. He cites state regulations requiring that certain procedures be followed before a prisoner is classified to segregation. It is undisputed that Gibbs did not receive a reclassification hearing or order after his 30–day detention ended on May 12. Gibbs filed a Step One grievance against defendant Hopkins.

Gibbs raises a substantive retaliation claim as well. It is apparently not disputed that he has completed a legal assistant/paralegal training course, and that he has successfully used his skills to assist at least one other prisoner, Benito Perez, to vindicate his rights in a § 1983 suit. A judgment in Perez' favor was entered September 22, 1992. Defendants Hopkins and Leavenworth were also defendants in that suit, although they were dismissed in the September 22 Order. Gibbs asserts that his continued incarceration in segregation during the pendency of Perez' suit was due to his efforts on Perez' behalf. He requested discovery concerning the actual availability of bed space during the months following the Committee's reclassification decision, in an effort to demonstrate that lack of bed space was a pretext for continuing his segregation. This discovery was never permitted. Gibbs further asserts that his June 1991 monthly review was not missed inadvertently, as defendant Hopkins claims, but intentionally, again in retaliation for his jailhouse lawyering. He cites as evidence initialed door cards from his cell indicating that Hopkins visited six times during June, contradicting Hopkins' claim to have taken a vacation during that month. Requested discovery concerning the initials on the cards, and details as to Hopkins' whereabouts during June, was not permitted.

The magistrate judge recommended that the claims be dismissed on the basis of defendants' Rule 56 motion for summary judgment. He found that Gibbs remained in segregation throughout his 30–day detention, and that reclassification never occurred. Since reclassification did not take place, a hearing was unnecessary. Furthermore, even if a reclassification did occur and the state-mandated procedures were triggered, federal constitutional norms were not violated. Finally, even if the prisoner did not receive all the due process protections required under federal constitutional law, he must still affirmatively plead and show the inadequacy of state-instituted remedies. Gibbs did not specifically allege that Michigan law provided an inadequate remedy.

As to Gibbs' retaliation claims, the magistrate judge recommended they be dismissed, concluding that there is no constitutionally protected right to assist another prisoner in petitioning the government for redress of greivances. A retaliation claim requires that action be taken against a plaintiff for exercising a constitutionally protected right; in the absence of such a right, there can be no unlawful retaliation.

## II.

■ We agree with the District Court that confinement in segregation does not independently violate the Due Process Clause: "As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Montanye v. Haymes*, 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976).

■ The Supreme Court has held, however, that state law may create protectable liberty interests. *See Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 461–63, 109 S.Ct. 1904, 1909–10, 104 L.Ed.2d 506 (1989). A state creates a protected liberty interest "by placing substantive limitations on official discretion." *Olim v. Wakinekona*, 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983). As we summarized the rule in *Parate v. Isibor*, 868 F.2d 821 (6th Cir.1989):

> In determining whether state-enacted rules create a protected liberty interest, the key is "whether or not the state has imposed 'substantive limitations' on the discretion of [officers] ... or, in other words, whether the state has used language of an unmistakably mandatory character."

*Id.* at 832 (quoting *Washington v. Starke*, 855 F.2d 346, 349 (6th Cir.1988)).

Classification of prisoners is generally "not a punitive or disciplinary sanction." Mich.Admin.Code R. 791.4401(1) (1979) & Supp. (1989). It ranges from community status at the low end to segregation at its most restrictive. Classification to the lower levels rests on such discretionary considerations as "maintenance of control and order," "the protection of the public," and "the safety of others." *Id.* at subpars. (a), (c), (e). Confinement in segregation, however, is a serious punishment curtailing or eliminating entirely many of the amenities afforded prisoners in the general population. Consequently, its imposition is governed by stricter standards, found at Mich.Admin.Code R. 791.4405:

(1) Segregation may be imposed only for 1 or more of the following reasons:

(a) A prisoner demonstrates an inability to be managed with general population privileges.

(b) A prisoner needs protection from other prisoners.

(c) A prisoner is a serious threat to the physical safety of staff or other prisoners or to the good order of the facility.

(d) A prisoner is a serious escape threat.

(e) A prisoner is under investigation by outside authorities for suspected felonious behavior.

(Emphasis added.) Furthermore, "The determination as to whether a prisoner shall be classified to segregation *shall* be made by the institution's security classification committee ... based upon ... the facts as found at a *hearing....*" *Id.* at par. (3) (emphasis added). This hearing requirement may be satisfied by a major misconduct hearing, *id.* at par. (4). In addition, "[a] prisoner who is classified to segregation shall be interviewed and have his or her security status reviewed *at least monthly.*" *Id.* at par. (5) (emphasis added). Finally, Policy Directive PD–DWA–60.01 (8–31–87) provides at page 13: "Reclassification to administrative segregation based solely on a major misconduct guilty finding may be done using the Security Reclassification Notice (CSO–423); an additional hearing is not required." This regulation may mean that Gibbs was entitled to a hearing after he was required to remain in segregation.

■ Assuming arguendo that Gibbs is correct that the District Court erred in concluding that it was not necessary to reclassify Gibbs because he never left segregation we still do not see that a procedural due process violation has occurred.

The District Court correctly concluded that Gibbs' claim is barred by *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), and *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), as well as by this court's holding in *Vicory v. Walton*, 721 F.2d 1062 (6th Cir. 1983), cert. denied, 469 U.S. 834, 105 S.Ct. 125, 83 L.Ed.2d 67 (1984). *Parratt* involved a Nebraska prisoner who was deprived of a

mail-order hobby kit by prison officials. The Supreme Court held that a § 1983 plaintiff claiming negligent deprivation of a property interest without due process of law must plead that state post-deprivation judicial remedies are inadequate before his claim may be cognizable in federal court. The Supreme Court and this court have extended this reasoning to encompass intentional as well as negligent deprivation of property rights and liberty interests. In *Vicory,* we held that in a § 1983 case "claiming the deprivation of a property [or liberty] interest without procedural due process of law, the plaintiff must plead and prove that state remedies for redressing the wrong are inadequate." 721 F.2d at 1066. Here Gibbs has not pled or shown that Michigan's judicial remedies are inadequate or that it would be futile to make the argument in the courts of Michigan that prison officials should not have kept him in segregation after May 12 without a hearing or other procedures.

■ Gibbs' procedural due process claim turns on an interpretation of state law. If state law has procedures adequate to consider the claim for damages for the asserted violation, there is no procedural due process violation. There has been no suggestion in this case that state judicial procedures are inadequate.

### III.

■ We turn now to Gibbs' substantive due process claim. He alleges that his June monthly review was intentionally skipped by defendants, and that even when he was re-classified back to general population on August 12, available bed space was ignored or otherwise manipulated to prevent him from being transferred out of segregation until October. The provocation for this maltreatment, Gibbs asserts, was the assistance he provided to other prisoners as a jailhouse lawyer, including Perez, whose claims were vindicated against the same defendants in a separate action. He asserts a constitutional right to assist others in asserting their own constitutional claims, and contends that defendants' retaliation against him for doing so is remediable under § 1983.

■ The District Court agreed that government officials may not retaliate against persons who have participated in constitutionally protected conduct, *see, e.g., Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977) (refusal to rehire in retaliation for exercise of free speech rights), nor interfere with a prisoner's fundamental right of access to the courts, *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). However, the District Court found that there is no constitutional right to assist other prisoners with their legal matters, citing *Smith v. Maschner,* 899 F.2d 940, 950 (10th Cir.1990), and *Gassler v. Rayl,* 862 F.2d 706 (8th Cir.1988). Strictly speaking, the District Court is correct that no constitutional right to assist exists. However, courts have recognized that prisoners are entitled to receive assistance from jail-house lawyers where no reasonable alternatives are present and to deny this assistance denies the constitutional right of access to the courts.

■ The Supreme Court in *Johnson v. Avery,* 393 U.S. 483, 490, 89 S.Ct. 747, 751, 21 L.Ed.2d 718 (1969), held that a state by statute or regulation may not bar inmates from providing legal assistance to other prisoners unless it provides reasonable alternatives. Here, segregation of a "jailhouse lawyer" in retaliation for providing legal aid is equivalent to the prison regulation barring assistance in *Avery.* Each instance is an example of state action by prison officials which potentially may result in a denial of access to the courts. If proven to be true, said actions are constitutionally impermissible. Thus, while there is technically no independent right to assist, prison officials may not prevent such assistance or retaliate for providing such assistance where no reasonable alternatives are available.

The Eighth Circuit was presented with a similar scenario in *Munz v. Nix,* 908 F.2d 267 (8th Cir.1990). That court held that a prisoner had an actionable claim under § 1983 when prison officials prohibited him from serving as a jailhouse lawyer. The court considered *Avery* and *Gassler* and concluded that Munz' complaint stated a claim

under § 1983 "if there is no reasonably effective alternative means of assistance available to [Iowa State Penitentiary] prisoners or to any specific grouping of prisoners within ISP." *Id.* at 268–69 n. 3. Although Munz had not alleged in his complaint that there were no alternative means of assistance, the court held that "plaintiff [must] be allowed to amend his complaint." *Id.* We find the analysis in *Munz* persuasive, and believe that Gibbs should be allowed to amend his complaint to properly allege a constitutional claim of denial of access to the courts, including an allegation that there are no reasonable alternatives which ensure access to the courts for the prisoners at the Chippewa Correctional Facility.

On the present state of the record, Gibbs appears to be a reasonably effective jailhouse lawyer. His efforts on behalf of Benito Perez were successful, *Perez v. Van Ochten, et al.,* No. 1:91–CV–566 (W.D.Mich., Sept. 22, 1992). He has since completed a course of instruction with the Blackstone School of Law in Dallas, Texas, as a Paralegal/Legal Assistant. Gibbs asserted in an affidavit to this court that Perez was incapable of asserting his own claims, and that Gibbs' assistance is necessary for other prisoners in his facility to adequately seek access to the courts. Defendants have so far offered no rebuttal to these claims, though it should be noted that petitioner did not make these allegations in his complaint with specificity.

██ Gibbs presented some evidence, and sought discovery to produce more, to further support his claims of retaliation against him for assisting other prisoners. Defendant Hopkins asserts that Gibbs' monthly review was inadvertently skipped in June because he was on vacation, and his assistant failed to conduct the review in his absence. Gibbs presented copies of "door cards" from six different days in June, clearly showing what appear to be the signed initials "RJH" on each, which would indicate that defendant Robert J. Hopkins was present in the facility during those times and not on vacation. Although negligent failure by prison officials to conduct Gibbs' monthly review in June would not be actionable, *see Daniels v. Williams,* 474 U.S. 327, 330–31, 106 S.Ct. 662, 664–65,

88 L.Ed.2d 662 (1986), evidence that Hopkins was lying about his not being present to conduct the review would cast doubt on the assertion that the failure was negligent and not intentional. It is disingenuous at best for defendants to assert that Gibbs "failed to establish that the initials he relied on were made by Hopkins" Def.Br. at 9, when they refused to answer his interrogatories to Hopkins concerning this very point. J.A. at 100. The District Court should have permitted discovery, requiring defendants to address Gibbs' claim that Hopkins actually was present when Gibbs' mandatory June review was scheduled.

██ Gibbs also sought discovery concerning the availability of bed space throughout the period in which he contends he was wrongfully confined in segregation. The District Court concluded that "the purported failure of defendants to give plaintiff the very first available bed which became available [sic] is of no federal concern. . . . determinations as to prisoner housing assignments and priorities concerning same are matters of general prison administration which do not implicate a prisoner's federal rights and are best left to the sound judgment of prison officials." J.A. at 119 n. 3. But federal judicial oversight of the actions of prison officials who are allegedly exercising their "sound judgment" concerning "matters of general prison administration" in derogation of the constitutional rights of prisoners is one of the purposes of § 1983. We may not simply defer to their judgment on the basis of administrative discretion; the Due Process Clause requires at the very least some minimal inquiry by the courts sworn to enforce its guarantees.

The alleged actions of the prison officials against Gibbs are relevant to the potential constitutional claim in this case. These actions, if proven, and if intentional, support the claim that prison officials are attempting to deny prisoners effective access to the courts. If no reasonable alternatives exist to ensure that prisoners have such access, then the retaliation against (segregation of) Gibbs may have been impermissible. Accordingly, Gibbs will be allowed, if he so chooses, to

amend his complaint to properly allege a cause of action under § 1983.

We therefore REVERSE the order of dismissal entered by the District Court as to the retaliation claim and REMAND for further proceedings consistent with this opinion, and AFFIRM as to the dismissal of the procedural due process claim.