*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0054P (6th Cir.)
File Name: 00a0054p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————————————

ISSAC LYDELL HERRON,
　　　　*Plaintiff-Appellant,*

　　　　　*v.*　　　　　　　　　No. 98-5726

JIMMY HARRISON, et al.,
　　　　*Defendants-Appellees.*

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 96-03051—J. Daniel Breen, Magistrate Judge.

Submitted: December 7, 1999

Decided and Filed: February 14, 2000

Before: COLE and GILMAN, Circuit Judges; CARR,
District Judge.[*]

———————————

[*]The Honorable James G. Carr, United States District Judge for the
Northern District of Ohio, sitting by designation.

1

_____

**COUNSEL**

**ON BRIEF:**    Pamela S. Lorch, OFFICE OF THE ATTORNEY GENERAL, CIVIL RIGHTS & CLAIMS DIVISION, Nashville, Tennessee, for Appellees.  Issac L. Herron, Only, Tennessee, pro se.

_____

**OPINION**
_____

RONALD LEE GILMAN, Circuit Judge.  Issac L. Herron, a Tennessee state prisoner, filed a civil rights complaint against various officials of the Cold Creek Correctional Facility and the Tennessee Department of Corrections (collectively, CCCF officials) pursuant to 42 U.S.C. §§ 1983, 1985, and 1986.  Herron alleges that those officials violated his civil rights both directly, by burdening the exercise of his constitutional rights, and indirectly, by retaliating against him for exercising those rights.  The magistrate judge to whom the case was transferred dismissed Herron's complaint for failure to state a claim upon which relief may be granted, finding that the majority of Herron's claims did not allege sufficient facts to constitute unlawful retaliation and the remainder of his claims were barred by issue preclusion due to prior suits that Herron had brought.

On March 8, 1999, several months after the briefs in this appeal were filed, this court issued its en banc decision in *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999), which clarified the burden borne by a prisoner alleging retaliation claims.  Under the *Thaddeus-X* standard, one of Herron's allegations of retaliation potentially states a claim upon which relief may be granted.  We therefore **AFFIRM** in part, **REVERSE** in part, and **REMAND** for further proceedings consistent with this opinion.

he asserts that "[t]he acts and practices of the defendants described in . . . this complaint violates [sic] plaintiff's Fourteenth Amendment right against discrimination based on religion."  He has not, however, alleged specific incidents of religious discrimination outside of the claims already considered and dismissed in *Herron v. Bradley*.  These claims may not be raised again.  *See Montana v. United States*, 440 U.S. 147, 153 (1979) ("Under res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." (citations omitted)).

**III.  CONCLUSION**

For all of the reasons set forth above, we **REVERSE** the magistrate judge's order of dismissal as to the retaliation claim found in Herron's first supplemental complaint and **REMAND** for further proceedings consistent with this opinion.  We **AFFIRM** the dismissal of the remainder of Herron's claims.

authority." Under the proper standard expressed in *Thaddeus-X*, however, this court has found that placing an inmate in administrative segregation "could deter a person of ordinary firmness from exercising his First Amendment rights." *Dunham-Bey v. Holden*, No. 98-15220, 1999 WL 1023730, at *2 (6th Cir. Nov. 5, 1999). *See also Gibbs*, 10 F.3d at 378 (stating that segregation of a jailhouse lawyer in retaliation for providing legal aid would be constitutionally impermissible).

With the exception of demonstrating that his assistance was needed by Muhammad, then, Herron has made out a prima facie claim of First Amendment retaliation under *Thaddeus-X*. He alleged that he engaged in protected conduct (legal assistance), that he was subsequently disciplined to a degree that might deter an ordinary person from such conduct, and that the two incidents were causally linked. Should Herron produce evidence showing that the inmate he assisted required that assistance, he will have established all three elements of a prima facie claim of unconstitutional retaliation. We therefore reverse the magistrate judge's dismissal of the retaliation claim alleged in Herron's first amended complaint and remand to allow Herron to amend his complaint if he so chooses.

## C.  Herron's equal protection claim

The magistrate judge properly dismissed Herron's equal protection claim, which was raised in both his original and supplemental complaints. An equal protection claim must assert that the plaintiff suffered class-based discrimination. *See McCleskey v. Kemp*, 481 U.S. 279, 292 (1987); *Henry v. Metropolitan Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990) ("To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class" (citation and internal quotation marks omitted)). In his original and first supplemental complaints, Herron invokes the Equal Protection Clause without identifying the protected class to which he belongs. Herron is more specific in his second supplemental complaint, where

## I.  BACKGROUND

Herron brought two earlier lawsuits against the prison staff at CCCF before initiating this suit. In May of 1994, he filed an action titled *Herron v. Bradley*, alleging violations of the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb, and his First Amendment rights to the free exercise of religion. In that case, Herron charged CCCF officials with purposely interfering with his observance of religious feasts and services as a member of the Church of God. He also charged prison officials with violating his rights by terminating the visitation privileges of Marvin Brunken, a religious volunteer who had led Church of God services at the prison.

At an evidentiary hearing in the *Bradley* case, Herron alleged that prison officials were then in the process of transferring him to another institution in retaliation for his attempts to seek legal redress against them. In an order dated March 28, 1997, the district court granted Herron's motion to temporarily enjoin CCCF officials from transferring him to another facility. The district court concluded that RFRA provided Herron with a valid First Amendment claim and that CCCF officials were therefore not permitted to retaliate against Herron for asserting that claim. After the Supreme Court issued its opinion in *City of Boerne v. Flores*, 521 U.S. 507 (1997), overruling RFRA and thus eliminating the legal grounds for Herron's complaint, the district court vacated the preliminary injunction and dismissed Herron's entire suit.

In his second case, *Herron v. Campbell*, filed in November of 1995, Herron alleged unconstitutional interference with the fund-raising activities of the Church of God at Cold Creek (CGCC), a church that Herron had incorporated. That case was dismissed in January of 1997 on the grounds that Herron had no standing to raise the corporation's rights and, as a non-lawyer, had no right to argue on its behalf.

In the present case, filed in October of 1996, Herron charges CCCF officials with a series of civil rights violations, some of which are new and others of which were raised in

Herron's prior lawsuits.  First, in his original complaint, Herron charges defendants with unconstitutional retaliation against the exercise of his First Amendment right to seek legal redress.  Herron relates that he has filed several grievances on his own behalf, as well as on behalf of a group of Muslim inmates.  In retaliation, he alleges that prison officials interfered with his religious services, denied his request to conduct business on behalf of CGCC, suspended his wife's visitation privileges, terminated him from his prison job, and ordered him transferred to the South Central Correctional Center (SCCC).  (Herron was not, in fact, transferred to SCCC, although he was subsequently transferred to Turney Center Industrial Prison—a move that he does not challenge in this case).

In his first supplement to the pending complaint, Herron charges three CCCF officials with taking further retaliatory actions against him for appearing before the institutional grievance board on behalf of a fellow inmate, Abu Bakar Muhammad.  Two days after his appearance, Herron alleges that defendant Tuggle approached Herron while Herron was visiting with his wife and instructed him to put his feet under the table. Herron and Tuggle then entered into a dispute over the validity of this rule.  Herron was later charged with and convicted of creating a disturbance, and sentenced to five days of punitive segregation, thirty days' loss of visitation privileges, two months' loss of package privileges, and an infraction fine of three dollars.  Herron claims that the disciplinary action was taken in retaliation for his having asserted his First Amendment rights to file grievances and to provide legal assistance to another inmate.  He also alleges several violations of his due process rights in the conduct of his disciplinary proceeding and sentencing.

Finally, in his second supplement to the pending complaint, Herron alleges that his right to privacy was violated when prison officials requested an additional copy of the charter and bylaws of CGCC.  When Herron declined this request, CCCF officials allegedly retaliated against him by firing Brunken from his position as a religious volunteer.  Herron

own First Amendment rights.  The question, then, is whether Herron's failure to allege that Muhammad required his assistance warrants dismissal of his claim at this stage.  As stated above, a pro se plaintiff's complaint should only be dismissed under Rule 12(b)(6) if it is clear that relief would not be appropriate under any set of facts that could be proved. *See Estelle*, 429 U.S. at 106.  Such is not the case here.

The case of *Gibbs v. Hopkins*, 10 F.3d 378 (6th Cir. 1993), is directly on point.  In that case, an inmate alleged that prison officials retaliated against him for providing legal assistance to other inmates.  Like Herron, the plaintiff in *Gibbs* neglected to allege that his services were vital to the other inmates' right of access to the courts.  The trial court granted summary judgment to the defendants based on this omission.  On appeal, this court reversed and remanded, stating that "[w]e . . . believe that Gibbs should be allowed to amend his complaint to properly allege a constitutional claim of denial of access to the courts, including an allegation that there are no reasonable alternatives which ensure access to the courts for the prisoners at the Chippewa Correctional Facility." *Id.* at 379.  Given the fact that Rule 56 imposes a more demanding burden on a plaintiff than Rule 12(b)(6), it would be incongruous to dismiss Herron's retaliation claim in view of *Gibbs*'s reversal of summary judgment when considering the same omission.

As an alternative ground for its holding, the magistrate judge also concluded that none of the disciplinary actions that Herron alleges in his first supplemental complaint rise to the level of impermissible retaliation. The magistrate judge drew upon pre-*Thaddeus-X* precedents in so holding, and mistakenly applied the general retaliatory standard to claims that allege retaliation against Herron's exercise of First Amendment rights.  Thus, regarding Herron's most serious allegation that he was sentenced to five days of administrative segregation in retaliation for assisting Muhammad, the magistrate judge found that "a prison disciplinary conviction and confinement to segregation for creating a disturbance neither shocks the conscience nor egregiously abuses

dismissed Herron's entire complaint as frivolous in an order dated July 7, 1997, after RFRA was overruled.

In the same order vacating the preliminary injunction, the district court stated that "[a]s Herron has no claim for interference with his First Amendment rights, he has no claim for retaliation . . . ." Herron therefore may not now allege specific retaliation by prison officials against him for pursuing the free exercise claims that were dismissed as frivolous in *Bradley*. To the extent that Herron is alleging a general claim of retaliation, the retaliatory acts alleged by Herron in this complaint, such as the suspension of his wife's visitation privileges and a threatened transfer to another facility, fall far short of the "shock the conscience" test.

### 2.    *Herron's right to provide legal assistance to others*

Herron's other retaliation claim, contained in his first supplemental complaint, alleges that CCCF officials impermissibly disciplined him for assisting Abu Bakar Muhammad in arguing a grievance before the prison board. The magistrate judge dismissed this claim, recognizing the principle that an inmate does not generally have an independent right to help other prisoners with their legal claims. *See Thaddeus-X*, 175 F.3d at 395. Such assistance is protected, however, when the inmate receiving the assistance would otherwise be unable to pursue legal redress. Assistance is then protected as a derivative of the complainant's right of access to the courts. *See Thaddeus-X*, 175 F.3d at 395*; Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). As an example, the assisting inmate in *Thaddeus-X* was found to have engaged in protected conduct because the complainant had no knowledge of the law, was being held in administrative segregation, and could only access legal books by requesting them by title.

Herron does not assert in his complaint that Muhammad would have been unable to obtain access to the courts without him. Indeed, it appears that Herron is unaware of this requirement, because his brief erroneously asserts that his legal work on behalf of other inmates is protected by Herron's

claims that his First Amendment rights to the free exercise of religion were thereby infringed because, without Brunken, he was unable to observe the Feast of Pentecost in the proper manner, congregate for Sabbath evening services, conduct acts of charity, or produce his church newsletter. In depriving him of the opportunity to associate with Brunken, Herron also maintains that prison officials violated his freedom to associate and his right to privacy. Furthermore, Herron claims that he was singled out for differential treatment on the basis of his religious affiliation, in violation of the Equal Protection Clause of the Fourteenth Amendment. Herron's original and supplemental complaints also charge CCCF officials with parallel violations of the Tennessee constitution.

On October 21, 1997, the defendants moved to dismiss all of Herron's complaints for failure to state a claim upon which relief may be granted. By order dated April 16, 1998, the magistrate judge to whom the case had been transferred by consent of the parties granted Herron's motion to file his second supplemental complaint, but contemporaneously granted the prison officials' motion to dismiss all of Herron's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Herron filed a timely notice of appeal on April 29, 1998.

## II.  ANALYSIS

### A.  Standard of review

We review a trial court's decision to grant a motion to dismiss de novo. *See Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir.1997). When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the trial court must accept all of the allegations in the complaint as true, and construe the complaint liberally in favor of the plaintiff. *See Miller v. Currie*, 50 F.3d 373, 377 (6th Cir.1995). A pro se plaintiff's complaint is held to an especially liberal standard, and should only be dismissed for failure to state a claim if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim

which would entitle him to relief." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (citation omitted).

## B.    Herron's allegations of impermissible retaliation

The primary thrust of Herron's complaint is that CCCF officials impermissibly retaliated against him for exercising his First Amendment right to file grievances and petition the courts for redress. In March of 1999, eight months after Herron had filed his appeal in this case, an en banc panel of this court decided *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999). *Thaddeus-X* clarified the law governing prisoner retaliation claims where the retaliation is alleged to have been directed at an inmate's efforts to litigate on behalf of himself or others. As the most recent, on-point decision of this court, *Thaddeus-X* is controlling, despite the fact that Herron did not bring the case to our attention as a supplemental authority.

There are two categories of retaliation claims—general claims of retaliation and claims that allege that an individual was retaliated against for the exercise of specific constitutional rights. *Thaddeus-X* clarifies the elements of each category and supplants previous cases that had blurred the lines between the two. General claims of retaliation are brought under the Due Process Clause of the Fourteenth Amendment. To state a successful case of general retaliation, a prisoner must establish "an egregious abuse of governmental power" or behavior that "shocks the conscience." *See id.* at 387. In the great majority of cases, inmates are unable to survive summary judgment under this demanding standard. The rare exceptions have been in cases where, for example, a prison official issued death threats against an inmate with a cocked pistol at his head, or where prison officials trumped up false disciplinary charges against an inmate and then proceeded to physically abuse him and levy harsh disciplinary sanctions against him. *See Cale v. Johnson*, 861 F.2d 943, 950-51 (6th Cir. 1988) (citing cases).

The second category of retaliation claims involves allegations that state officials penalized an individual for the exercise of a specific constitutional right. In such cases, an

inmate bears a lesser burden, and is only required to establish the following three elements: (1) the inmate engaged in protected conduct, (2) an adverse action was taken that would deter a person of ordinary firmness from continuing to engage in that conduct, and (3) the adverse action was motivated, at least in part, by the inmate's protected conduct. *See Thaddeus-X*, 175 F.3d at 394.

### 1.    Herron's right to pursue his own grievances

An inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf. *See Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996). This right is protected, however, only if the grievances are not frivolous. *See Lewis v. Casey*, 518 U.S. 343, 353 (1996) ("Depriving someone of a frivolous claim . . . deprives him of nothing at all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions."). Thus Herron's pursuit of legal claims against CCCF officials in the instant case and in previous cases was protected conduct only to the extent that the underlying claims had merit.

Herron's only claim of retaliation for the exercise of his *own* right of access to the courts is advanced in his original complaint. In that complaint, he describes a series of adverse actions that CCCF officials allegedly took in response to his filing a lawsuit in *Herron v. Bradley*, a suit that charged prison officials with violating his First Amendment right to the free exercise of religion. Herron specifically claims that CCCF officials suspended his wife's visitation privileges, terminated his job, and ordered him transferred to the SCCC, all in retaliation for his filing a legal complaint.

The underlying free exercise claims that allegedly sparked these incidents of retaliation were presented in *Bradley*. Indeed, concerned by Herron's allegations that prison officials might retaliate against Herron for filing the *Bradley* suit, the district court issued a preliminary injunction to prevent CCCF officials from transferring Herron to another facility while the case was pending. Ultimately, though, the district court