Reverend Willie B. YOUNG, as Personal Representative of the Estate of Roscoe Young, decedent, Plaintiff,

v.

Bill MARTIN, David Jamrog, John Doe # 1, and John Doe # 2, Defendants.

No. 01–CV–72569–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Oct. 25, 2001.

Lee A. Stevens, Barbara A. Roulo, Feikens, Stevens, Detroit, MI, for plaintiff.

Patrick J. Wright, Michigan Dept. of Atty. General corrections Div., Lansing, MI, for defendants.

## MEMORANDUM OPINION AND ORDER

HOOD, District Judge.

### I. *INTRODUCTION/FACTS*

Plaintiff, the Reverend Willie B. Young, is the personal representative of the decedent Roscoe Young, an inmate with the Michigan Department of Corrections ("MDOC"). On July 9, 2001, Plaintiff filed the instant suit against Defendants Bill Martin, David Jamrog, John Doe # 1 and John Doe # 2. Defendant Bill Martin is the Director of the MDOC. David Jamrog is the current warden at the Parr Highway Correctional Facility in Adrian, Michigan, formerly known as the Adrian Temporary Facility ("ATF"). Plaintiff's Complaint currently names John Doe # 1 as the unidentified Medical Director of the Adrian Temporary Correctional Facility and John Doe # 2 as the unidentified Director of the Department of Correctional Medical Services. It is noted that in Defendants' motion, the MDOC records indicate that the decedent was housed at the Gus Harrison Correctional Facility ("ARF") and not at the facility formerly known as the Adrian Temporary Facility.

The decedent was incarcerated and housed, according to Plaintiff's Complaint, at the Adrian Temporary Facility (Defendants claim Mr. Young was housed at Gus Harrison Correctional Facility, known as ARF) from March 1999 until his death on November 10, 1999. Mr. Young suffered from diabetes and other physical ailments. Plaintiff claims that Mr. Young's medical condition was made known to the personnel at ATF. Mr. Young developed a staph infection as early as June 1999 related to various ulcerations on his feet and legs. Plaintiff claims Mr. Young was routinely deprived of the proper administration and dosage of his insulin required for control of his diabetes. Mr. Young was eventually transferred to Dwayne Waters Hospital

where he suffered acute renal failure and sepsis. On October 14, 1999, an urgent nephrology consult was requested but was denied by Defendant John Doe # 2, Director of Correctional Medical Services, on October 18, 1999. The request was eventually approved and scheduled for November 12, 1999. Plaintiff claims the delay in the authorization deprived Mr. Young of his constitutional rights to be free of cruel or unusual punishment. On October 21, 1999, Mr. Young was transferred to the Foote Memorial Hospital and underwent various surgical procedures. Mr. Young died from a debilitating stroke on November 10, 1999 at age 47. (Plaintiff's Complaint, ¶¶ 9–25)

Plaintiff asserts one count of a violation of 42 U.S.C. § 1983 in the Complaint. Plaintiff claims that Defendants denied Plaintiff's decedent medical care and that they were deliberately indifferent to Mr. Young's right to be free of cruel and unusual punishment. Defendants' failure to authorize the necessary and appropriate life saving treatment caused Mr. Young's premature demise. Plaintiff claims that these Defendants violated the Eighth Amendment prohibition against cruel or unusual punishment to and in the execution of official, or unofficial governmental custom, usage, decision or policy. (Complaint, ¶ 31)

Discovery has not been held in this matter. Defendants seek a stay in discovery pending this Court's ruling on the qualified immunity issues pertaining to both named Defendants—Bill Martin and David Jamrog.

## II. *MOTION TO STAY DISCOVERY*

Defendants Martin and Jamrog claim they are entitled to a stay of discovery pending the Court's ruling on their motion for summary judgment based on qualified immunity, citing *Spurlock v. Satterfield*, 167 F.3d 995, 1005 (6th Cir.1999) (qualified immunity is a defense that protects public officials not only from liability, but also from the burdens of trial and discovery). In response, Plaintiff claims that fundamental fairness requires that discovery, be allowed, citing *Gibbs v. Hopkins*, 10 F.3d 373 (6th Cir.1993).

When a plaintiff files a complaint against a public official, the trial court "must exercise its discretion so that officials are not subjected to unnecessary and burdensome discovery or trial proceedings." *Crawford–El v. Britton*, 523 U.S. 574, 118 S.Ct. 1584, 1596–97, 140 L.Ed.2d 759 (1998). The district court should resolve any immunity defense "before permitting discovery." *Id.* Based on the Sixth Circuit case cited by Defendants and the Supreme Court case cited above, the court should first resolve the immunity defense before subjecting the public official to unnecessary and burdensome discovery or trial proceedings. The case cited by Plaintiff, *Gibbs*, does not address the issue where the public official raises an immunity defense at the outset of the litigation process. Defendants Martin and Jamrog are entitled to have the immunity issue resolved at this juncture prior to permitting discovery. The Court below addresses the immunity issue and pursuant to the reasons set forth below, limited discovery will be permitted.

## III. *MOTION FOR SUMMARY JUDGMENT*

### A. *Personal Involvement*

The Court notes that Defendants Martin and Jamrog are making two arguments in this motion. The first is based on lack of personal involvement and the second is based on qualified immunity. See, Defendants' Brief, pp. 1–2.

Defendants Martin and Jamrog claim they have no personal involvement in the

alleged deliberate indifference that is subject of this action. Defendant Martin submitted an affidavit indicating that he is the Director of the MDOC but has no personal knowledge of the events at issue involving Mr. Young. (Martin Aff., ¶ 7) While he is the chief administrative officer of the MDOC, he has no role in the day to day operation of the Department's health service areas nor does he direct, provide or oversee the actual care provided to individual prisoners. (Martin Aff., ¶ 6)

■ Defendant Jamrog submitted an affidavit stating that he is the Warden at the Adrian Correctional Facilities and has held this position since November 2000. (Jamrog Aff, ¶ 1) Defendant Jamrog claims he was not employed at the facility during any part of 1999 and did not assume the position of Warden at the Adrian Correctional Facilities until November 2000. (Jamrog Aff, ¶ 3)

In response, Plaintiff does not address Defendant Jamrog's claim that he had not been employed by the facility until November 2000, after the death of the decedent. If in fact Defendant Jamrog was not employed by either the Adrian Temporary Facility, now known as the Parr Highway Correctional Facility, nor the Gus Harrison Correctional Facility (ARF), there can be no claim against Defendant Jamrog since he was not personally involved nor was in a supervisory capacity at the time of Plaintiff's death. Defendant Jamrog is dismissed because Plaintiff has failed to state a claim against Defendant Jamrog because Plaintiff has not shown Defendant Jamrog was personally involved in the matter.

■ As to Defendant Martin, Plaintiff responds claiming that he is liable as the chief administrator of the MDOC because Defendant Martin adopted a policy which denied necessary referrals and that such a policy exhibits deliberate indifference to Plaintiff's medical condition.

■ Taking Plaintiff's Complaint as true, since no discovery has been taken in this matter, and, viewing the light most favorable to the non-moving party, the Complaint does state a policy claim against Defendant Martin in his supervisory capacity. See ¶ 31 of the Complaint. In order for a municipality or a supervisor to be liable under section 1983 there must be some personal involvement or evidence that "execution of [the] government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Generally, the doctrine of respondeat superior has no application in a § 1983 claim absent an allegation that the defendants were following the government's policies or customs. *Dunn v. Tennessee,* 697 F.2d 121, 128 (6th Cir.1982). Although Plaintiff's Complaint is void of any personal involvement by Defendant Martin in this case, the Complaint, as noted above, has alleged that Defendant Martin has adopted a policy regarding the authorization request procedure utilized by the correctional medical services department which discouraged the administration of necessary life saving health care to inmates. Discovery is required to develop this theory for the reasons set forth below. Defendant Martin's motion for summary judgment based on lack of personal involvement is denied based on his supervisory authority pursuant to *Monell.*

### B. *Qualified Immunity*

Alternatively, Defendants Martin and Jamrog claim they are entitled to qualified immunity because they had no personal involvement in what happened to Mr. Young. Defendants claim that Mr. Young received the proper amount of care. In their motion and brief, Defendants Martin

and Jamrog chronicle in detail the amount of medical attention Mr. Young received, including the submission of Mr. Young's medical record, which Defendants indicate Plaintiff already has in his possession.

 Public officials carrying out executive responsibilities are entitled to qualified immunity from personal liability for money damages under § 1983. Under the doctrine of qualified immunity, such an official will not be found personally liable for money damages unless the official's actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The "clearly established" rights allegedly violated by the official cannot be considered at an abstract level, but must be approached at a level of specificity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). A plaintiff must prove two factors to show that a government official is not entitled to qualified immunity from his suit: 1) that the facts as alleged by him show a violation of a constitutional right; and 2) that such violated right was clearly established. *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001). Under the Eighth Amendment, prison inmates have a right to a certain level of medical care and deliberate indifference to the serious medical needs of a prisoner violates this Eighth Amendment right by subjecting them to cruel and unusual punishment. *Estelle v. Gamble,* 429 U.S. 97, 104–05, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Sanderfer v. Nichols,* 62 F.3d 151, 153 (6th Cir.1995). The standard encompasses two components: objectively, the medical needs must be sufficiently serious, and subjectively, the state actors involved must have acted in a deliberately

indifferent manner. *Hunt v. Reynolds,* 974 F.2d 734, 735 (6th Cir.1992).

The first factor to be addressed is whether, based on the facts alleged by Plaintiff, Defendants violated the decedent's constitutional rights. It is clear that based on the Supreme Court and Sixth Circuit cases, the decedent had a constitutional right to a certain level of medical care and that the deliberate indifference to the serious medical needs of the decedent would violate his Eighth Amendment right to be free from cruel and unusual punishment.

 As to whether Defendant Jamrog violated Mr. Young's right, if he was not employed by either Adrian facilities as the Warden at the time the decedent was housed at those facilities, Defendant Jamrog could not have violated Mr. Young's constitutional right under the Eighth Amendment, either personally or in his supervisory capacity. Defendant Jamrog's affidavit indicates that he was not employed at the Adrian facilities during the time period at issue. Defendant Jamrog could not have violated Mr. Young's rights and, therefore, he is entitled to qualified immunity.

 Regarding Defendant Martin, as noted in the previous analysis, although Defendant Martin was not personally involved, Plaintiff stated a policy argument in his Complaint at Paragraph 31. Under a qualified immunity analysis, "deliberate indifference describes a state of mind more blameworthy than negligence" and it entails "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan,* 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). A prison official is only "found liable under the Eighth Amendment for denying an inmate humane conditions of confinement [if] the official knows of and disregards an

excessive risk to inmate health or safety." *Id.* at 837, 114 S.Ct. 1970. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence ... and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842, 114 S.Ct. 1970. "[I]t is enough [for the prisoner to show] that the official acted or failed to act despite his knowledge of a substantial risk of serious harm" but "need not show that [the] prison official acted or failed to act believing that harm actually would befall [the prisoner]." *Id.*

■ Here, Defendant Martin has indicated that he has no personal involvement in this case but admits he is the administrative officer of the MDOC. Plaintiff has alleged that Defendant Martin executed a policy regarding the authorization request procedure utilized by the correctional medical services department which discouraged the administration of necessary life saving health care to inmates. Defendant Martin has not sufficiently established that he had no knowledge that there was a substantial risk of serious harm in the execution of this policy. Viewing the evidence most favorable to Plaintiff, based on his Complaint, Plaintiff has stated a sufficient policy claim. Limited discovery is required on what the policy at issue is, whether said policy violated Mr. Young's constitutional rights under the Eighth Amendment, and whether Defendant Martin had knowledge that the policy had a substantial risk of serious harm.

As to the second factor, Mr. Young's constitutional right to be free from deliberate indifference to his medical needs is clearly established based on the *Estelle* holding by the Supreme Court in 1976.

Defendant Jamrog is entitled to qualified immunity. Limited discovery should be conducted as to the policy Plaintiff claims is at issue and whether Defendant Martin had any knowledge of such policy.

## IV. *CONCLUSION*

Accordingly,

IT IS ORDERED that Defendants' Motion to Stay Discovery (**Docket No. 9, filed August 22, 2001**) is GRANTED IN PART and DENIED IN PART. Limited discovery is required on the qualified immunity defense as to Defendant Martin only.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment (**Docket No. 10, filed August 22, 2001**) is GRANTED IN PART and DENIED IN PART. Defendant Jamrog is DISMISSED with prejudice. The claims against Defendant Martin are DISMISSED based on lack of personal involvement and qualified immunity except for the policy claim against Defendant Martin. The Motion for Summary Judgment based on qualified immunity as to Defendant Martin only is denied without prejudice. The policy claim against Defendant Martin remains but may be renewed after limited discovery is conducted as to the policy at issue as it relates to Defendant Martin's qualified immunity defense.

IT IS FURTHER ORDERED that all discovery on the qualified immunity issue as it relates to Defendant Martin only must be completed by Friday, December 22, 2001. If Defendant Martin appeals the instant order, discovery in this matter is stayed. See *Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (a district court's denial of a claim of qualified immunity, to the extent that it

turns on an issue of law, is an appealable final decision within the meaning of 28 U.S.C. § 1291 under the collateral order doctrine).