NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0055n.06

Case No. 16-3436

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

Jan 23, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ANNIE MARIE PATRICK, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| CITIMORTGAGE, INC., | ) | DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

Before: MERRITT, CLAY, and DONALD, Circuit Judges.

**MERRITT, Circuit Judge.** Plaintiff Annie Marie Patrick was struggling to make her home mortgage payments after the death of her husband and the loss of his income. She contacted defendant CitiMortgage, Inc., and contracted to reduce her monthly mortgage payments under the Home Affordable Modification Program, a federal program designed to give relief to homeowners falling behind on their mortgage payments.[1] The Program did not subsidize home mortgages or give a private right of action under federal law. It merely

---

[1] The Home Affordable Modification Program was enacted pursuant to the Emergency Economic Stabilization Act, 12 U.S.C. § 5219a (2008). As part of the Home Affordable Modification Program, the Secretary of the Treasury created regulations to guide both borrowers and lenders through the loan modification process. The Home Affordable Modification Program Guidelines can be found at https://www.treasury.gov/press-center/press-releases/Documents/modification_program_guidelines.pdf.

encouraged banking institutions who had participated in securing mortgages to adjust mortgage payments for defaulting homeowners.[2]

This appeal arises from Patrick's claim that CitiMortgage breached the contract by mishandling her escrow account during and after the process to reduce her monthly mortgage payments. Her principal claim is that CitiMortgage made double or duplicate premium payments on her homeowner insurance policy. Like the district court, we conclude that the duplicate payments were a result of Patrick's own mistake in acquiring duplicate policies. Although we understand Patrick's frustration and her difficulty in understanding the mortgage modification process, she has failed to raise any genuine issue of fact that creates liability in tort or contract on the part of CitiMortgage.

## I.

Patrick obtained a home mortgage loan from CitiMortgage in January 2007 that is secured by her home in Wooster, Ohio. After Patrick's husband died 2012, she could not meet her monthly mortgage payment and applied to modify her mortgage under the federal Home Affordable Modification Program. Patrick was found eligible for the program and was required to make three trial payments of $520.02. When Patrick successfully completed the trial period, she was offered a permanent modification. In April 2013, Patrick and CitiMortgage entered into a Home Affordable Modification Agreement that lowered Patrick's monthly payments by approximately $300 per month, from $816.97 to $519.78 ($414.60 for principal and interest and $105.18 for "estimated" monthly escrow for 1-5 years. In June 2013, Patrick filed a Chapter 7

---

[2] Calculation of the monthly reduced payment should include, according to the Home Affordable Mortgage Program regulations, the following expenses: modified monthly principal and interest; monthly pro-rate amount for real estate taxes; monthly pro-rate amount for property and flood insurance, if applicable; monthly pro-rata amount for homeowner's association dues, condominium or cooperative unit maintenance fees and ground rent, if applicable; and, if applicable, the projected monthly escrow shortage payment, if any. Home Affordable Modification Program Chapter C65.1(a).

bankruptcy petition with the United States Bankruptcy Court for the Northern District of Ohio. During the pendency of the bankruptcy proceeding, Patrick filed an adversary proceeding against CitiMortgage. The essence of her claims in the bankruptcy court adversary proceeding was that CitiMortgage breached the Modification Agreement by improperly calculating her monthly payments in violation of the Home Affordable Modification Program regulations, and by improperly administering her escrow account by paying "duplicate" homeowner insurance premiums out of the account to two separate insurance companies for the same period of coverage. Both parties filed for summary judgment. The bankruptcy court granted summary judgment to CitiMortgage on all Patrick's claims in two separate opinions. *Patrick v. CitiMortgage, Inc. (In re: Patrick)*, Adv. No. 13-6103, No. 13–6166, 2014 WL 7338929 (Bankr. N.D. Ohio Dec. 22, 2014); *Patrick v. CitiMortgage, Inc. (In re: Patrick)*, Adv. No. 13-6103, No. 13–6166, 2015 WL 1883966 (Bankr. N.D. Ohio Apr. 23, 2015). Patrick filed objections to the bankruptcy court's opinions and the matter was transferred to the United States District Court for the Northern District of Ohio. The district court adopted the bankruptcy court's findings of fact and conclusions of law. *Patrick v. CitiMortgage, Inc.*, No. 5:15CV1376, 2016 WL 1156348 (N.D. Ohio Mar. 24, 2016). This appeal followed.

## II.

Patrick argues that CitiMortgage breached the Modification Agreement by making duplicate homeowner insurance premiums paid from the escrow account and then refusing to seek a refund from the insurer. Pursuant to her mortgage documents, it is Patrick, not CitiMortgage, who chooses the insurance coverage and carrier and she, not CitiMortgage, is the named insured on the policies. Patrick's mortgage simply requires CitiMortgage to make payments from the escrow account as insurance and tax bills come due. Patrick's property was

covered by two different homeowner insurance policies from approximately August 2012 to August 2013 because a new policy was issued without cancelling the one already in effect. The original policy was issued by Allied Insurance Company, which sent an invoice directly to CitiMortgage, as is customary if the insurance premiums are paid out of the borrower's escrow account. The invoice was dated July 2, 2012, and payment was due no later than August 16, 2012. CitiMortgage paid Allied before the due date as required by the terms of the mortgage. During the same time period, Patrick herself contacted a new insurance carrier, Ohio Mutual Insurance Company, to issue a homeowner policy on the property because the premiums were less expensive than those with Allied. Ohio Mutual sent an invoice to CitiMortgage dated August 16, 2012, requiring payment by September 6, 2012. CitiMortgage paid the invoice from Ohio Mutual, as required by the mortgage terms.

It is unclear whether Patrick ever gave notice to CitiMortgage of the new Ohio Mutual policy, but it is of no matter to our analysis. The insurance contract between Patrick and Allied states that the *insured* may cancel the policy at any time by giving notice in writing to Allied, and that the premium will be refunded pro rata. CitiMortgage argues correctly that pursuant to the insurance contract, only Patrick, as the named insured, can cancel the policy or seek reimbursement for any overcharge. The record does not show, and Patrick does not contend, that she cancelled the policy with Allied and sought a refund after contracting with Ohio Mutual for insurance. CitiMortgage properly paid the invoices from the escrow account to two different insurance companies as required by the terms of the mortgage and it is not required to seek a refund on behalf of Patrick.

Patrick also challenges the amortization of her monthly escrow payments, arguing that under the Home Affordable Modification Program regulations any escrow arrearage should be capitalized over the remaining life of the loan. Patrick does not refer to any specific regulation, but simply asserts that CitiMortgage improperly distributed her escrow payments over 60 months instead of over the life of the loan. Contrary to Patrick's position, the Program regulations specifically state that any escrow arrearages may not be spread over the life of the loan and must be paid either in a lump sum or over a 60-month period.[3] CitiMortgage contends its calculation amortizing the escrow shortage over 60 months is in accordance with the Home Affordable Modification Program regulations. We agree and find no error in CitiMortgage's calculation.

Patrick also makes a claim for breach of an implied covenant of good faith and fair dealing, an implied principle in every contract under Ohio law. But Ohio law recognizes only a breach of contract claim; it does not recognize a free-standing or independent claim for breach of the covenants of good faith and fair dealing. *Mortg. Elec. Regis. Sys., Inc. v. Mosley*, No. 93170, 2010 WL 2541245, at \*11 (Ohio Ct. App. June 24, 2010); *see also Wendy's Int'l, Inc. v. Saverin*, 337 F. App'x 471, 476 (6th Cir. 2009) (noting that the implied duty of good faith does not create an independent cause of action under Ohio law); *Lakota Loc. Sch. Dist. Bd. of Ed. v. Brickner*, 671 N.E.2d 578, 583-84 (Ohio Ct. App. 1996) (no tort cause of action for breach of good faith and fair-dealing separate from breach of contract claim). Patrick seems to claim that the increase

---

[3] The regulation states:

> The Borrower may either remit the Escrow shortage as a lump sum payment or Monthly Escrow Shortage Payment as part of the Target Payment. This amount may *not* be capitalized [over the life of the mortgage]. If the Borrower elects to make Monthly Escrow Shortage Payments, the amount *must* be spread equally over a 60-month period and be included when calculating the proposed Target Payment.

Chapter C65.6(d) (emphasis added).

in her monthly escrow payment resulted from "inaction" or a lack of communication from CitiMortgage. giving rise to a breach of the covenant of good faith and fair dealing. Patrick must, however, identify a contractual provision that was breached by CitiMortgage and she has not done so. Because, as we explained above, we find no breach of the Modification Agreement by CitiMortgage, there is no breach of the implied covenant of good faith and fair dealing by CitiMortgage.

**III.**

Patrick makes a variety of claims on appeal challenging the standard of review used by the district court in reviewing the bankruptcy court's rulings. The proceeding came to the district court after the bankruptcy court made findings of fact and conclusions of law on the parties' cross-motions for summary judgment, following Federal Rule of Bankruptcy Procedure 7056, which provides that Federal Rule of Civil Procedure 56 applies in adversary proceedings in bankruptcy. The district court correctly reviewed the bankruptcy court's findings of fact and conclusions of law regarding the cross-motions for summary judgment *de novo* under Federal Rule of Bankruptcy Procedure 9033(d),[4] employing the familiar standard for summary judgment under Federal Rule of Civil Procedure 56. *Wesbanco Bank Barnesville v. Rafoth (In re Baker & Getty Fin. Servs., Inc.)*, 106 F.3d 1255, 1259 (6th Cir. 1997) ("The bankruptcy court makes initial findings of fact and conclusions of law. The district court then reviews the bankruptcy court's findings of fact for clear error and the bankruptcy court's conclusions of law *de novo*. . . .

---

[4] Rule 9033(d) reads as follows:

(d) Standard of review

The district judge shall make a de novo review upon the record or, after additional evidence, of any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the proposed findings of fact or conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instructions.

We in turn review the bankruptcy court's findings of fact for clear error and the district court's conclusions of law *de novo*.") (citations omitted). Both the bankruptcy court and the district court went into considerable detail concerning the legal standards used in reaching their decisions. We see no error.

As recognized by Patrick, summary judgment can be granted only in the absence of any disputes of material fact. A fact is "material" only if its disposition will affect the legal conclusion. Specifically, Patrick's primary complaint seems to be that the bankruptcy court gave more weight to the evidence presented by CitiMortgage than to her evidence, particularly her affidavit testimony concerning the circumstances surrounding the duplicative homeowner insurance policies. She argues that the facts in her affidavit must be accepted as true, but, like the district court, we see no material factual dispute.

Patrick also takes issue with the bankruptcy court's denial of her motion to compel certain documents relating to calculation of her escrow in the adversary proceeding and the district court's review of the issue. We review *de novo* the district court's determination of whether the bankruptcy court abused its discretion in ruling on discovery issues. *Wright Enters. v. S. Gas Co. (In re Wright Enters.)*, 77 F. App'x 356, 364 (6th Cir. 2003) (citing *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 683 (6th Cir. 2000)). We first note that CitiMortgage did provide many documents to Patrick during the adversary proceeding in the bankruptcy court. In denying Patrick's motion to compel, the bankruptcy court found that Patrick was seeking documents created after she had signed the Modification Agreement so they could not be relevant in shedding light on how the escrow amount was calculated. The bankruptcy court required CitiMortgage to submit a privilege log of documents for *in camera* review and found that none were relevant to Patrick's request. Patrick has not articulated what it is she seeks that

she has not received. As explained above, any increases in the amount required to be kept in the escrow account are based on increases in her insurance premiums, not on unexplained increases in the principal and interest. Insurance premiums are not expenditures over which CitiMortgage has control, and the Modification Agreement notes that monthly escrow payments, and in turn the monthly mortgage payment that Patrick must pay going forward, "may adjust periodically." We see no error in the bankruptcy court's original decision or the district court's review of the denial of the motion to compel discovery. *See Hayes v. Equit. Energy Res. Co.*, 266 F.3d 560, 571 (6th Cir. 2001) (affirming district court's decision to deny motion to compel where court determined that discovery was irrelevant to central issues in the case); *Begala v. PNC Bank, Ohio Nat'l Ass'n*, 214 F.3d 776, 783 (6th Cir. 2000); *Ghandi v. Police Dep't*, 747 F.2d 338 (6th Cir. 1984) (affirming district court's decision not to compel documents where district court determined that documents were privileged after *in camera* review).

During the pendency of the proceedings in the district court, Patrick filed a motion seeking leave to file a "supplemental pleading" to add additional claims to the Amended Complaint filed in the adversary proceeding in the bankruptcy court. Patrick sought to add a claim under the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601–2617, alleging that her escrow payment continues to rise in violation of that statute, and a claim for violation of the covenant of good faith and fair dealing due to a breach by CitiMortgage of the Modification Agreement based on the rising escrow amount. The district court denied the motion and we review that denial for abuse of discretion. *See, e.g., Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000); *Gen. Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130 (6th Cir. 1990).

Under Federal Rule of Civil Procedure 15(d), a court may permit a party to file a supplemental pleading setting out "any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." However, the generally liberal pleading rules do not apply to post-judgment motions like this one. The bankruptcy court awarded summary judgment to CitiMortgage on all claims in April 2015. Patrick sought to supplement her complaint more than a year after the close of discovery and several months after the bankruptcy court had filed its findings of fact and conclusions of law awarding summary judgment to CitiMortgage. The fact that the claim was made very late in this proceeding, *after* the bankruptcy court had made its final rulings, leaves us unable to say that it was an abuse of discretion for the district court to deny the motion to allow a supplemental pleading. *See Schwartz v. City of Treasure Island*, 544 F.3d 1201, 1229 (11th Cir. 2008) ("The district court did not abuse its discretion by refusing to allow Gulf Coast to expand the scope of its lawsuit by asserting an entirely new theory of recovery at so late a date, particularly where discovery was already well underway and Gulf Coast could raise the new claims in another lawsuit."); *In re Wade*, 969 F.2d 241, 250 (7th Cir. 1992) ("The district judge here exercised his discretion to exclude an extraneous matter to be included in already omnifarious litigation. This was not an abuse of discretion."); *McCray v. Carter*, 571 F. App'x 392, 399 (6th Cir. 2014) (holding that the district court did not abuse its discretion in denying leave to amend after discovery had closed).

Finally, Patrick also argues that she was denied her "constitutional right of access to the courts." Patrick does not clearly articulate the basis for her claim, but it necessarily fails no matter what theory she is advancing. Because denial-of-access claims require government action, Patrick could not state a viable claim for any action committed by CitiMortgage. *See Flagg v. City of Detroit*, 715 F.3d 165, 173 (6th Cir. 2013). And because, as we have

explained, the bankruptcy and district courts did not err in granting summary judgment on Patrick's claims, she cannot state a viable cause of action for any action taken by the lower courts, assuming that such a theory would even be cognizable.

For the foregoing reasons, the judgment of the district court is affirmed.