**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 18a0205n.06

Case No. 17-2188

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| SANDRA PLETOS; MITCHELL PLETOS, | ) | **FILED** |
|  | ) | Apr 19, 2018 |
| Plaintiffs-Appellants, | ) | DEBORAH S. HUNT, Clerk |
|  | ) |  |
| v. | ) | ON APPEAL FROM THE UNITED |
|  | ) | STATES DISTRICT COURT FOR |
|  | ) | THE EASTERN DISTRICT OF |
| MAKOWER ABATTE GUERRA WEGNER | ) | MICHIGAN |
| VOLLMER, PLLC, et al., | ) |  |
|  | ) |  |
| Defendants-Appellees. | ) |  |
|  | ) |  |

BEFORE: COLE, Chief Judge; GUY and DONALD, Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge.** In 2005, Plaintiffs-Appellants Sandra and Mitchell Pletos ceased paying their homeowners association fees. When the association recorded liens on their property for the unpaid amounts, the Pletoses brought a fifteen-count lawsuit against it in state court. After the association successfully counterclaimed, and the Pletoses' case was dismissed, the Pletoses still refused to pay the judgment or any continuing fees. This action represents their latest attempt to evade payment, thirteen years after their first missed installment and six after their initial suit. As such, the district court dismissed the case as to certain defendants, and granted summary judgment to others. For the reasons that follow, we AFFIRM the district court's order in full.

I.

The Pletoses own a portion of "Lake in the Woods," a plotted subdivision in the Township of Shelby, Macomb County, Michigan. By virtue of that ownership, the Pletoses are members of the Lake in the Woods Association, Incorporated ("LWA"), a Michigan nonprofit corporation homeowners association. From 2005 to 2012, the Pletoses failed to pay annual and special assessments set forth in the LWA governing documents. In 2012, LWA recorded liens against the Pletoses' property for $1,295.53 and $6,271.74. *See Pletos v. Lake in the Woods Homeowners Ass'n*, No. 319087, 2015 WL 1650803, \*1 (Mich. Ct. App. Apr. 14, 2015). The Pletoses then brought a fifteen-count suit in Macomb County Circuit Court alleging violation of LWA bylaws, the Fair Debt Collection Practices Act, and for slander of title, among others. *Id.* LWA responded by retaining John Finkelman and his law firm, Makower Abbate Guerra Wegner Vollmer, PPLC (the "Makower Defendants") to file a counterclaim seeking unpaid assessments, interest, late charges, and fees. *Id.*

LWA is governed by: (1) its Articles of Incorporation, (2) the Declaration of Easements, Covenants, Conditions and Restrictions for Lake in the Woods Subdivision ("DECCR") and (3) its Bylaws. Under Article III, Sections 1 and 3 of the Bylaws, lot owners must pay general dues and special assessments on a yearly basis. (RE 8-3, PageID #399-401.) Section 8 also provides that dues and assessments that are not paid within 30 days will be subject to interest and late charges. (*Id.* at PageID #427-429.) Article IV of the DECCR obligates lot owners to pay annual general assessments and special assessments for capital improvements. (*Id.* at PageID #402.) Article IV also provides that "[a]ll annual and special assessments, whether general or related to the Lake Lots, together with interest, costs, and reasonable attorneys' fees, shall from

date of assessment be a charge and a continuing lien upon the Lot against which each such assessment is made." (*Id.*)

Considering the governing documents, the Macomb County Circuit Court granted summary disposition in LWA's favor, both as to the Pletoses' complaint and LWA's counterclaim. *Pletos*, 2015 WL 1650803 at *4. In sum, the court found that LWA followed the DECCR and its Bylaws and did not breach its covenant with the Pletoses—who failed to prove that any delinquent assessments were in error. *Id.* The court also found that LWA was not a debt collector, eliminating any FDCPA claims. *Id.* at *5. After an evidentiary hearing, the court awarded LWA $20,553.64, as well as any additional legal fees that LWA incurred in attempting to collect the judgment. *Id.* at *6.

The Pletoses appealed and the court granted a stay conditioned on posting of a $25,000 bond. The Michigan Court of Appeals affirmed. *Pletos*, 2015 WL 1650803 at *1. The Michigan Supreme Court denied leave to appeal. *Pletos v. Lake in the Woods Homeowners Ass'n,* 499 Mich. 881, 876 N.W.2d 522 (Mich. 2016). Still, the Pletoses refused to pay either the judgment entered against them or continuing fees.

Before and after the Michigan Supreme Court's decision, various at-issue communications occurred: Mrs. Pletos requested documents from LWA to review; Defendant Finkelman corresponded with the Pletoses' counsel regarding how to respond to Mrs. Pletos; the Pletoses' attorney chastised Defendant Finkelman for failing to instruct LWA to communicate with Mrs. Pletos directly; Defendant Finkelman responded to Mrs. Pletos's document request; LWA sent the Pletoses an invoice for the fees due, as well as the judgment entered; the Pletoses responded and objected to LWA's internal procedures, reiterating many of the allegations in the Pletoses' original complaint; the Makower Defendants corresponded with the Pletoses' counsel

regarding payment of the judgment and the calculation of the same; Defendant Finkelman sent the Pletoses' counsel a letter indicating the outstanding amount; Defendant Finkelman contacted CNA Surety—the Pletoses' appeal bond provider; and CNA Surety declined to pay the appeal bond directly to LWA. At that point, Defendant Finkelman moved for judgment against CNA Surety for the bond, which the state court granted. The Pletoses moved for reconsideration, which the court denied.

Before the state court's judgment against CNA Surety, the Pletoses filed this action against Roger Papa, Giovan Agazzi, Danny Landa, Kati Azia, and Mike Desjardines—LWA Board members (the "LWA Defendants")—and the Makower Defendants alleging FDCPA, Racketeer Influenced Corrupt Practices Act, Michigan Regulation of Collection Practices Act violations, as well as seeking an accounting and injunctive relief preventing further collection activity. The district court partially granted the Makower Defendants' Motion to Dismiss and the LWA Defendants' Motion for Summary Judgment finding: (1) the *Rooker-Feldman* doctrine barred all the Pletoses' claims; (2) the FDCPA claims were either barred by the statute of limitations or failed to state a claim; (3) the RICO claims were not sufficiently pleaded; and (4) the majority of the Pletoses' claims were barred by *res judicata* or collateral estoppel. After dismissing or granting summary judgment on all federal claims, the district court declined to exercise supplemental jurisdiction of the remaining state law claims. It also summarily denied the Pletoses' motion to supplement their complaint to add communications allegedly violative of the FDCPA.

## II.

We first review de novo the district court's application of the *Rooker-Feldman* doctrine. *See Hall v. Callahan*, 727 F.3d 450, 453 (6th Cir. 2013). We also review de novo a district

court's decision to grant a motion to dismiss or for summary judgment. *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 611 (6th Cir. 2003) (citations omitted). We then review the district court's denial of the Pletoses' motion to supplement for abuse of discretion. *Spies v. Voinovich*, 48 F. App'x 520, 527 (6th Cir. 2002).

III.

The Pletoses' first argument—that the district court improperly applied the *Rooker-Feldman* doctrine—is largely dispositive to their appeal. *Rooker-Feldman* is a combination of abstention and *res judicata*. *See, e.g.*, *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283-84 (2005) (citing *Dist. Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462, 476 (1983), and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923)). Under the doctrine, the Supreme Court's appellate jurisdiction precludes lower federal courts from engaging in appellate review of state court proceedings. *Id.* "The *Rooker-Feldman* doctrine . . . is confined to cases . . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp.*, 544 U.S. at 284. Thus, *Rooker-Feldman* deprives a lower court of jurisdiction only when the cause of the plaintiff's complaints is the state judgment itself. *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006). To determine whether *Rooker-Feldman* applies, we must look to the "source of the injury the plaintiff alleges in the federal complaint" and determine if the injury is the state court itself, or another source—such as a third party's actions. *Id.* at 393. However, if the third party's actions "are the product of a state court judgment, then a plaintiff's challenge to those actions are in fact a challenge to the judgment itself." *Id.* at 394.

The district court found that all the actions complained of were the product of the state court judgment and that the Pletoses' arguments otherwise were attempts to relitigate issues already decided by the state courts. The Pletoses, however, argue that the injuries they allege were caused not by the state court judgment, but by the actions of various LWA members seeking to collect on that judgment and continue to collect LWA-related fees. An examination of their claims proves otherwise.

First, the Pletoses argue that their FDCPA claims are against new parties and in response to new alleged debts. But the "new parties" are simply LWA members for their conduct in that capacity and relate to the assessments of LWA debts. The alleged debts include amounts incurred prior to this suit—and which the state court already determined were valid—as well as fees sustained in the attempt to assess and collect those amounts. While some amounts alleged fall outside of those addressed in state court, they flow from the very same conduct and, as addressed below, the Pletoses' attacks are identical to those lodged in state court. While FDCPA claims often involve allegations of misconduct in underlying state-court litigation, and prior litigation does not itself trigger *Rooker-Feldman*, the Pletoses' claim seeks to invalidate both the right to assess, and the manner in which LWA assessed and collected, fees. And the state court has already ruled on each. Even claims against "third parties"—the Makower Defendants—are a direct result of the state court judgment.

Next, in their RICO claim, the Pletoses again argue that the homeowners association dues were unsubstantiated, that the liens were not valid, and that the LWA members were improperly elected or appointed, thereby eliminating their ability to assess the fees and obtain the liens. All of these arguments were disposed of at the state level. Likewise, the Pletoses' fraud claims

allege that the debt is unsubstantiated and that the LWA Defendants have no legal right to collect the debt. The state court squarely denied this very argument.

Similarly, the Pletoses' abuse of process claims allege, essentially, that the previous litigation was fraudulent and vexatious. This very claim belies the Pletoses' contention that the defendants here are different and that the difference negates application of the *Rooker-Feldman* doctrine. The Pletoses could not sue LWA members for abusing the litigation process when those members were not personally party to that suit. Any claims would thus be necessarily brought against LWA. Instead, this claim illustrates that the parties are largely the same and the Pletoses seek to circumvent or obviate the result of their litigation against LWA. While this Circuit has found that *Rooker-Feldman* did not preclude such abuse of process claims when the injury flowed from independent abuse rather than the state court judgment itself, here, the claims are related to the state litigation. *See Todd v. Weltman, Weinberg & Reis Co.*, 434 F.3d 432, 436-37 (6th Cir. 2006). And if LWA's counterclaim was vexatious, frivolous, or otherwise abusive, the Pletoses could have moved to dismiss the counterclaim throughout that litigation.

The Pletoses' claim for an accounting seeks only to determine the "rights and responsibilities of the parties based on facts surrounding the alleged account statement and unsubstantiated billing notices from 2013 through 2016." (RE. 1, PageID #27.) Again, the state court has determined what the rights and responsibilities of the parties are, finding that the Pletoses owed LWA $20,553.64 for the previously unpaid dues. The state court found the fees properly assessed and reaffirmed LWA's right to do so. We cannot disturb that finding. Though the Pletoses purportedly seek to challenge later-years' missed payments, their reasoning is nearly identical.

Finally, the Pletoses' claim for injunctive relief is equally foreclosed. It not only asks that we order LWA not to enforce its judgment against the Pletos, but that we re-determine what LWA is owed. This is nothing more than an attempt to avoid paying the homeowners association fees that the state court already determined they must—this time for a longer period of delinquency, as well as on a prospective basis.

The nature of each of the Pletoses' claims shows that they stem from the state court litigation. "A court cannot determine the source of the injury 'without reference to the plaintiff's request for relief.'" *Berry v. Schmitt*, 688 F.3d 290, 299 (6th Cir. 2012) (citation omitted). Here, virtually all of the Pletoses' requested relief seeks to negate LWA's ability to assess or collect homeowners association fees, either by attacking LWA's right to do so or their collection methods. Thus, with slight nuances, the Pletoses effectively seek to appeal the state court order finding that homeowners association fees were properly assessed. Under *Rooker-Feldman*, the district court properly found that it lacked jurisdiction to review that decision. As do we.

IV.

The only conceivable claims that might not be barred by *Rooker-Feldman* are the FDCPA claims in which the Pletoses allege that various defendants attempted to collect debt from them, whether related to the judgment entered or otherwise. We have previously declined to apply *Rooker-Feldman* over arguably similar claims. *See Brown v. First Nationwide Mortg. Corp.*, 206 F. App'x 436, 439–40 (6th Cir. 2006) (finding jurisdiction because the injury resulted from the actions of various people involved in the mortgage foreclosure proceedings before the state judgement was entered). But this is a different case. The Pletoses' FDCPA claims are nonetheless caused by state court judgment. *See Durham v. Haslam*, 528 F. App'x 559, 563 (6th Cir. 2013); (RE. 1, PageID #7.)

Even if we were to assess those claims on the merits, the district court's opinion adequately addressed them, providing numerous grounds for dismissal. First, the majority of the alleged violations fall outside the one-year statute of limitations. *See* 15 U.S.C. § 1692k(d). Second, the communications with CNA Surety are barred by collateral estoppel, as the state court already ruled on the contention that the Makower Defendants were not permitted to contact the company. Third, the remaining communications that are not barred by the statute of limitations do not, as alleged, violate the FDCPA. The district court fully explained why each innocuous communication was not violative of the FDCPA. (RE 42, PageID #1504-07.)

## V.

The Pletoses lastly claim that the district court abused its discretion when it denied their Motion for Leave to File a Supplemental Complaint, *instanter*. Generally, the district court "has discretion to deny a motion to amend a complaint after an answer has been filed . . ." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). That said, "when a district court is presented with a motion to supplement under Fed. R. Civ. P. 15(d) it must at the very least issue a ruling on that motion." *Spies*, 48 F. App'x at 527. Though the district court entered a ruling, it did not specifically state a basis for its decision. *See Rose*, 48 F. App'x at 527.

Still, we will not find that the district court abused its discretion. The Pletoses' motion was filed almost a year after their initial pleading, eight months after their first amended complaint, and one day before oral argument was scheduled on Defendants' Motion for Summary Judgment and Motion to Dismiss. *See Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 459 (6th Cir. 2001) (affirming denial of leave to amend, in part, because it was sought a year-and-a-half after filing of complaint). While not filed post-judgment here, the district court found—and we agree—that that the state court had entered judgment on the issues of this case

years before. Given the prospect of future unnecessary delay, the district court was within its discretion when it denied the motion. *See, e.g.*, *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971) (explaining that it was not an abuse of discretion to deny reopening a case because the motion to reopen to submit additional proof was untimely) (citations omitted); *Patrick v. CitiMortgage, Inc.*, 676 F. App'x 573, 575 (6th Cir. 2017); *In re Wade*, 969 F.2d 241, 250 (7th Cir. 1992) ("The district judge here exercised his discretion to exclude an extraneous matter to be included in already omnifarious litigation. This was not an abuse of discretion.").

Moreover, abuse of discretion by denying a motion to supplement amounts only to harmless error when the proposed amendment would not survive a 12(b)(6) motion to dismiss. *See Rose*, 203 F.3d at 421. Although not explicitly stated by the district court, the Pletoses' proposed additions would not save it from dismissal. The allegations the Pletoses wished to supplement simply built on the claims being dismissed under *Rooker-Feldman*, and for failure to state a claim and collateral estoppel. Allowing the Pletoses to so supplement would have been futile.

## VI.

The district court correctly found that *Rooker-Feldman* applied to the entirety of the Pletoses' claims. While purportedly brought under partially different statutes, against arguably different parties, in a different forum, the gravamen of the Pletoses' claims is the same: an attempt to avoid paying homeowners association fees. The state court already determined that they must, and we cannot and do not revisit that ruling.

Though the claims are barred by *Rooker-Feldman*, the district court provided additional reasoning as to why each claim fails—including failure to state a claim, the statute of limitations,

*res judicata*, and collateral estoppel. Even were we to find jurisdiction, we would adopt the reasoning of the district court and its conclusions and deny the Pletoses' appeal. We AFFIRM.

**RALPH B. GUY, JR., Circuit Judge, concurring.** I respectfully disagree with the majority's application of the *Rooker-Feldman* doctrine to allegations of defendants' conduct occurring after the issuance of the state-court judgment against plaintiffs. Although richly interspersed with insinuations that the state-court judgment was unjust, the amended complaint alleges that the *methods* defendants used to collect the state-court judgment violated the FDCPA. Allegations of unlawful post-judgment conduct included attempts to collect a debt in excess of the judgment, refusal to verify that debt, and violation of statutes governing whom a debt collector may contact and how.

The majority acknowledges this, but concludes that plaintiffs' alleged injuries are "nonetheless caused by the state court judgment." In fact, plaintiffs' injury stems not from the state-court judgment, but from the attempts to collect on it. A jury could, in theory, find for such a plaintiff without undermining the state-court judgment. The availability of statutory damages under the FDCPA is proof of this. I am concerned that the majority's analysis could be used to insulate any judgment-collection activity—however brazenly unlawful—from the FDCPA or other laws, whenever *Rooker-Feldman* prevents us from reviewing the underlying state-court judgment and injuries caused by that judgment.

I concur in the result, however, because the majority adequately sets forth alternative grounds for disposing of plaintiffs' FDCPA claims. I would rely on those grounds exclusively in affirming the district court on this issue.